UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10026-RGS

DANA J. WILLIS

v.

OCWEN FINANCIAL CORPORATION; OCWEN LOAN SERVICING, LLC;
PHH MORTGAGE CORPORATION; and DEUTSCHE BANK NATIONAL
TRUST COMPANY, TRUSTEE FOR INDYMAC IMSC MORTGAGE LOAN
TRUST 2007-HOA1, MORTGAGE PASS-THROUGH SERIES 2007-HOA1

MEMORANDUM AND ORDER
ON CROSS MOTIONS FOR SUMMARY JUDGMENT

June 2, 2022

STEARNS, D.J.

Plaintiff Dana J. Willis brought this case against Ocwen Financial Corporation, Ocwen Loan Servicing, LLC (collectively, Ocwen), PHH Mortgage Corporation (PHH), and Deutsche Bank National Trust Company (Deutsche Bank), alleging that the defendants repeatedly misled him during loan modification negotiations and breached multiple contracts with him. Currently before the court are the defendants' motion for summary judgment and Willis's cross-motion for partial summary judgment.   For the following reasons, the court will <u>ALLOW</u> the defendants' motion and <u>DENY</u> Willis's motion.

**BACKGROUND**

On December 26, 2006, Willis executed a $180,000 note in favor of Quicken Loans, Inc. and granted a mortgage to Mortgage Electronic Registration Systems, Inc. (MERS) in connection with his purchase of a property located at 45 Washington Street, Unit 52, Methuen, Massachusetts (the Methuen Property).   MERS assigned the mortgage to Deutsche Bank as trustee in April of 2018.   Ocwen and its successor PHH serviced the loan.

On February 1, 2017, Willis informed a PHH representative that he could not afford his monthly mortgage payments and asked whether he could obtain mortgage relief.   The representative notified Willis that he could apply for a loan modification, among other options.   Willis applied for a loan modification in June of 2017.

Willis and PHH representatives spoke via telephone several times about the terms of his loan modification.   Willis contends that the parties agreed that he would make real estate tax and insurance payments directly to the appropriate authorities and insurers, while the defendants assert the parties' discussions made clear that Willis would place the tax and insurance payments in escrow.

Willis entered into a trial payment plan that required him to make

three trial payments.   Once he completed the trial payment plan, Willis and PHH entered into a loan modification agreement (LMA).   The LMA states that Willis would make tax and insurance payments for the defendants to hold in escrow.   The LMA further states, "By this section, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Account."   LMA (Dkt # 42-1) at 57.   The LMA adds that it is the entire agreement between the parties and that it "supersedes all previous negotiations and discussions between the Borrower and the Lender and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms."   *Id.* at 58.

It is undisputed that Willis did not make any payments under the LMA after November 1, 2017.   However, Willis asserts that his performance was excused because defendants were in breach of their prior agreement to forego the requirement that he make escrow payments.   On January 4, 2018, Ocwen sent Willis a notice of default.   The parties entered discussions regarding a resolution to the default, and throughout summer of 2018 PHH provided Willis with reinstatement figures.   In connection with its

3

evaluation of Willis for another loan modification, PHH in January of 2019 obtained an appraisal of the Methuen Property that valued it at $220,000. Willis objected to this valuation and, rather than obtaining his own appraisal, suggested that the parties hire a contractor to provide repair estimates for the Methuen Property and deduct that estimate from PHH's valuation to obtain an accurate appraisal.    PHH rejected that suggestion.    Willis remained in default and the defendants reported the loan as delinquent to credit bureaus.

PHH was also a lender for a note secured by a mortgage to Willis's late mother Ruth Willis for a property located at 6 Porter Road, Andover, Massachusetts (the Andover Property).    Willis was not an original party to the loan but was a partial owner of the Andover Property after his mother's death in December of 2014.   On September 3, 2020, PHH and Santander Bank, N.A. (Santander) entered into a settlement agreement with Willis and his mother's estate (the Settlement Agreement) to resolve a dispute between the parties that had placed the Andover Property in foreclosure.    The preamble to the Settlement Agreement states,

> Disputes and Differences have arisen between the Parties with respect to a certain loan designated by the number 7107830049 and a related mortgage of real property known as and located at 6 Porter Road, Andover, Massachusetts (the "Loan").    The

Parties desire fully and finally to resolve and to settle all disputes and differences between them, whether known or unknown, on the terms and conditions set forth in this Agreement.

Settlement Agreement (Dkt # 46-1) at 1.

The Settlement Agreement required Willis to make a one-time $15,000 payment to bring the loan current, followed by regular monthly payments. The Settlement Agreement also had a provision regarding credit reporting that stated, "[PHH and Santander] shall have removed all negative reports, including without limitation delinquent payment and references to foreclosure, as published and set forth by all credit reporting agencies, including without limitation Equifax, Experian and Transunion, as pertain to Dana Willis and Ruth Willis."   *Id.* ¶ 4.

Willis filed suit against the defendants in Essex County Superior Court on November 27, 2020, and the defendants removed the case here pursuant to the court's diversity jurisdiction.   On April 15, 2021, Willis filed an Amended Complaint.   The Amended Complaint states five counts, some of which combine multiple causes of action: (I) breach of contract, detrimental reliance, and promissory estoppel related to the defendants' alleged oral promise to forgo escrow for Willis's tax and insurance payments as part of the Methuen Property loan modification; (II) breach of contract related to the credit reporting provision of the Settlement Agreement; (III) fraud,

5

intentional misrepresentation, and negligent misrepresentation related to the defendants' alleged promise to forgo escrow; (IV) fraud, intentional misrepresentation, and negligent misrepresentation related to the defendants' allegedly fabricated valuation of the Methuen Property; and (V) unfair and deceptive business practices under Massachusetts General Laws ch. 93A. The defendants moved for summary judgment on all counts. Willis cross-moved for summary judgment as to Count II only. Both motions are now ripe for this court's review.

## DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A dispute is genuine where "the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Joseph v. Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021), quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). A fact is material "if it 'has the potential of affecting the outcome of the case.'" *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020), quoting *Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016). "To

succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).   The burden then shifts to the nonmoving party to "adduce specific, provable facts demonstrating that there is a triable issue." *Id*. The standard is the same on cross-motions: the court "view[s] each motion separately, drawing all inferences in favor of the nonmoving party." *Fadili v. Deutsche Bank Nat'l Trust Co.*, 772 F.3d 951, 953 (1st Cir. 2014).

## Count I: Breach of Contract and Promissory Estoppel – LMA

Willis asserts that the defendants breached an oral promise allowing him to make tax and insurance payments for the Methuen Property directly to tax authorities and insurers, and not to an escrow account.   The parties agree that Massachusetts law applies to all of Willis's claims.   To establish a breach of contract claim under Massachusetts law, a plaintiff must show "the existence of a valid and binding contract, that the defendant breached the contract's terms, and that the plaintiff suffered damages as a result of that breach." *Scholz v. Goudreau*, 901 F.3d 37, 43 (1st Cir. 2018).

No reasonable jury could find that a valid and binding contract existed to forego escrow for Willis's tax and insurance payments.   The LMA expressly provides that "any prior waiver by Lender of Borrower's obligation

to pay to Lender Funds for any or all Escrow Items is hereby revoked" and adds that it "supersedes all previous negotiations and discussions between the Borrower and the Lender and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms."   LMA at 57-58.   The LMA plainly requires the escrow payments, notwithstanding any prior agreement to the contrary.

Willis's breach of contract claim also fails for a simpler reason: he has not presented any evidence that an oral agreement to waive escrow payments existed.[1]   Instead, he has pointed to the pleadings as evidence of the oral agreement.   *See* Pl.'s Statement of Triable Facts (Dkt # 49) ¶ 7 (citing Amended Complaint as evidence of agreement that Willis pay insurance and taxes directly without escrow).   But the purpose of summary judgment "is

---

[1] Defendants' affiant states that she reviewed recordings of telephone conversations establishing that "no representative of Defendants promised Willis at any time that escrow payments could or would be removed from his monthly mortgage payment obligations under the modified mortgage."   Aff. of Gina Feezer (Dkt # 42-1) ¶ 13.   Willis correctly points out that this statement, and others like it in the affidavit, is hearsay that the court cannot credit on a motion for summary judgment.   *See Davila v. Corporación De P.R. Para La Difusión Pública*, 498 F.3d 9, 17 (1st Cir. 2007).   While the business records exception may apply to documents Defendants have included in the summary judgment record, it does not apply to Feezer's statements about the contents of records or recordings.   Defendants have nonetheless pointed to an absence of evidence on Willis's part that would prevent him from meeting his burden of proof at trial.

to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Calvi v. Knox Cnty.*, 470 F.3d 422, 427 (1st Cir. 2006), quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.3d 791, 794 (1st Cir. 1992).   Willis has not produced a scintilla of proof of any oral agreement to waive escrow payments; even his own affidavit is silent on the topic of the escrow payments.   *See* Pl.'s Sworn Statement (Dkt # 49-2) at 1.   No reasonable jury could find that the defendants breached an oral agreement to waive a requirement that Willis pay tax and insurance payments into an escrow account.

Willis's detrimental reliance/promissory estoppel claim also lacks support in the record.   Under Massachusetts law, a plaintiff bringing a promissory estoppel claim must establish, "(1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." *Neuhoff v. Marvin Lumber and Cedar Co.*, 370 F.3d 197, 203 (1st Cir. 2004).   The promise must be unambiguous, and the plaintiff's reliance on the promise must be reasonable. *See R.I. Hosp. Trust Nat'l Bank v. Varadian*, 491 Mass. 841, 848 (1995).

Whether reliance was reasonable is usually a question of fact for the jury, but may be decided on a motion for summary judgment where no reasonable jury could find the reliance reasonable.   *See Zotbelle, Inc. v. Kryolan Corp.*, 416 F. Supp. 3d 33, 49 (D. Mass. 2019).   "Where a written statement conflicts with a prior oral representation, reliance on the oral representation is generally held to be unreasonable."   *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1124 (1st Cir. 1995).

Willis's vague assertion that the defendants promised he could make tax and insurance payments directly is insufficient to establish a promissory estoppel claim.   As noted, there is no evidence in the record that the defendants actually made such a promise.   Further, to the extent there was an oral promise, Willis's reliance on it is unreasonable because it directly contradicts the escrow provisions of the LMA.   The defendants are entitled to summary judgment on Count I.

**Count II: Breach of Contract – Settlement Agreement**

The parties contest whether the Settlement Agreement's credit reporting provision refers to just the Andover Property or also required PHH to remove negative reports related to Willis's delinquent loan on the Methuen Property.   This dispute is a matter of contract interpretation.

10

Willis concedes that his second breach of contract claim only applies to PHH.

Questions of contract interpretation are ordinarily questions of law for the court. *See Nadherny v. Roseland Prop. Co., Inc.*, 390 F.3d 44, 48 (1st Cir. 2004). Questions of fact arise only where a contract is ambiguous, and then only when both parties' interpretations are reasonable in light of the extrinsic evidence. *See id.* Whether a contractual term is ambiguous is a question of law that turns on whether the language "is reasonably prone to different interpretations or susceptible to differing, but nonetheless plausible, constructions." *Lanier Prof'l Servs., Inc. v. Ricci*, 192 F.3d 1, 4 (1st Cir. 1999) (internal quotation marks omitted). To determine whether a term is ambiguous, the court looks to both "the contested language and to the text of the contract as a whole." *Balles v. Babcock Power Inc.*, 476 Mass. 565, 572 (2017); *see also Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 179 (1st Cir. 1995) ("Accepted canons of construction forbid the balkanization of contracts for interpretive purposes."). Further, "[c]ommon sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons." *Fishman v. LaSalle Nat'l Bank*, 247 F.3d 300, 302 (1st Cir. 2001).

Willis contends that when PHH agreed to remove "*all* negative reports"

11

(emphasis added), it intended to include reports related to the delinquent loan on the Methuen Property.   The defendants counter that the Settlement Agreement, including the credit reporting provision, relates only to the Andover Property and any associated loans.

The court concludes that the Settlement Agreement unambiguously required PHH to remove negative reports related only to the Andover Property, not the Methuen Property.   First, as PHH points out, the Settlement Agreement expressly states that it is an agreement to resolve disputes related to loan number 7107830049 and an associated mortgage of the Andover Property.  *See* Settlement Agreement at 1.   The Settlement Agreement viewed as a whole, therefore, suggests that its terms only refer to the Andover Property.   Second, common sense dictates that the defendants' reading is correct.   Because the Settlement Agreement resolved the foreclosure proceedings over the Andover Property, it is sensible that PHH and Santander would remove any negative reports related to that property; the loan was no longer delinquent once the parties agreed on a path forward. Willis has not explained why the credit reporting provision would cover a loan for an unrelated property whose status the Settlement Agreement did not otherwise change.   Given the presumption that the parties sought to

achieve a rational outcome, *see Fishman*, 247 F.3d at 302, the court concludes that the Settlement Agreement unambiguously did not require PHH to remove negative credit reports related to Willis's loan on the Methuen Property.

Because the meaning of the Settlement Agreement is unambiguous, the court does not consider the limited extrinsic evidence the parties have submitted.   PHH was not required to remove negative reports to credit agencies concerning the Methuen Property and thus did not breach the Settlement Agreement.   The court will allow the defendants' motion for summary judgment as to Count II and deny Willis's cross-motion.

## Count III: Fraud, Intentional Misrepresentation, and Negligent Misrepresentation – LMA

Willis asserts common law fraud, intentional misrepresentation, and negligent misrepresentation claims based on the defendants' purported untrue promise that Willis would be able to make tax and insurance payments directly and forego escrow.   A claim for fraud under Massachusetts law requires the plaintiff to show that the defendant "(1) made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act on this representation, (4) which the plaintiff justifiably relied on as being true, to [his] detriment."

*Sullivan v. Five Acres Realty Trust*, 487 Mass. 64, 73 (2020) (internal quotation omitted).   The elements of an intentional misrepresentation claim are the same.   *See Yerardi v. Pac. Indem. Co.*, 436 F. Supp. 2d 223, 246 (D. Mass. 2006).   To prevail on a negligent misrepresentation claim, a plaintiff must establish that the defendant

> (1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information.

*First Marblehead Corp. v. House*, 473 F.3d 1, 9 (1st Cir. 2006) (internal punctuation omitted).

As noted, there is no evidence in the summary judgment record that the defendants made the alleged false statement that Willis could forego escrow and make tax and insurance payments for the Methuen Property directly.   Accordingly, the defendants are entitled to summary judgment on Count III.

## Count IV: Fraud, Intentional Misrepresentation, and Negligent Misrepresentation – Methuen Property Valuation

Willis contends that PHH fraudulently or negligently promised that it would modify the Methuen Property loan balance to its fair market value and then fabricated a $220,000 valuation.   According to the defendants, when

14

contemplating a second loan modification, PHH obtained a valuation that appraised the Methuen Property at $220,000.   *See* Defs' Statement of Material Facts (Dkt # 42) ¶ 21.   Willis objected to this valuation and asked for a review.   *See id.* ¶ 22.   PHH advised Willis that he could obtain a separate appraisal to submit to PHH for review.   *See id.* ¶ 23.   Willis did not obtain a separate appraisal, but instead suggested that the parties engage a contractor to price the renovation of the Methuen Property and deduct the contractor's cost estimates from PHH's valuation to obtain a new valuation. *See id.* ¶ 24-25.   PHH declined.   *See id.* ¶ 26.   Willis does not dispute these facts.   *See* Pl.'s Statement of Triable Facts at 4.   Nor does Willis submit any evidence related to the valuation dispute, let alone evidence from which a jury could conclude that PHH made any promises related to the valuation or that PHH fabricated the $220,000 valuation.   As with Count III, Willis has not supported his claims in Count IV with proof that the defendants made a false representation of material fact or supplied false information.   The court will enter summary judgment for the defendants on Count IV.

## Count V: Unfair and Deceptive Business Practices

Chapter 93A makes unlawful all "[u]nfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). To prevail on a Chapter 93A claim, a plaintiff must prove that "a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the claimant suffered a loss of money or property as a result." *Zielinski v. Citizens Bank, N.A.*, 552 F. Supp. 3d 60, 69 (D. Mass. 2021) (citation omitted). "[A] practice is unfair if it is within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 240 (1st Cir. 2013), quoting *Linkage Corp. v. Trs. of Bos. Univ.*, 425 Mass. 1, 27 (1997). "A practice is deceptive . . . if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted." *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 394 (2004).

Willis bases his Chapter 93A claim on "cycles of Defendants['] promises and subsequent failures to fulfill." Opp'n (Dkt # 48) at 21. His 93A demand letter only addresses alleged promises to waive escrow requirements in the LMA and to obtain a fair valuation of the Methuen Property, not any promises to rescind negative reports to credit agencies.

16

*See* Ch. 93A Letter (Dkt # 22-2) at 2-3.   Again, there is no evidence in the summary judgment record that any defendant ever made these promises. Willis again cites the Amended Complaint as evidence in support of his Chapter 93A claim and states that his "testimony" proves that the defendants engaged in a cycle of broken promises.   Opp'n at 12.   The Amended Complaint is not testimony.   Summary judgment will enter for the defendants on Count V.

## ORDER

For the foregoing reasons, the defendants' motion for summary judgment is <u>ALLOWED</u> and Willis's partial motion for summary judgment is <u>DENIED</u>.   The Clerk will enter judgment for the defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE